**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **JASMINE B.,**[1] | **3:18-cv-00862-BR** |
| **Plaintiff,** | **OPINION AND ORDER** |
| **v.** | |
| **Commissioner, Social Security Administration,** | |
| **Defendant.** | |

**BRIAN SCOTT WAYSON**
Cascadia Disability Law LLC
P.O. Box 12028
Portland, OR 97212
(503) 891-8376

       Attorneys for Plaintiff

---

[1] In the interest of privacy and pursuant to the recommendation of the Judicial Conference of the United States, this Opinion and Order uses only the first name and the initial of the last name of the nongovernmental parties. The same designation will be used to identify nongovernmental parties' family members if named in this case.

1 - OPINION AND ORDER

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**JOSEPH JOHN LANGKAMER**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2212

        Attorneys for Defendant

**BROWN, Senior Judge.**

        Plaintiff Jasmine B. seeks judicial review of a final
decision of the Commissioner of the Social Security
Administration (SSA) in which she denied Plaintiff's application
for Supplemental Security Income (SSI) under Title XVI of the
Social Security Act.  This Court has jurisdiction to review the
Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

        For the reasons that follow, the Court **AFFIRMS** the decision
of the Commissioner and **DISMISSES** this matter.


                    <u>**ADMINISTRATIVE HISTORY**</u>

        Plaintiff filed an application for SSI on June 4, 2014, and

alleged a disability onset date of June 16, 1992.  Tr. 184.[2]  Her
application was denied initially and on reconsideration.  An
Administrative Law Judge (ALJ) held a hearing on January 25,
2017.  Tr. 41-75.  At the hearing the ALJ amended Plaintiff's
onset date to April 17, 2014.  Tr. 45.  Plaintiff and a
vocational expert (VE) testified at the hearing, and Plaintiff
was represented by an attorney.

On March 9, 2017, the ALJ issued an opinion in which she
found Plaintiff is not disabled and, therefore, is not entitled
to benefits.  Tr. 25-36.  On March 19, 2018, that decision became
the final decision of the Commissioner when the Appeals Council
denied Plaintiff's request for review.  Tr. 1-6.  *See Sims v.
Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on June 16, 1992, and was 24 years old at
the time of the hearing.  Tr. 184.  Plaintiff has a high-school
education.  Tr. 51.  Plaintiff does not have any past relevant
work experience.  Tr. 69.

Plaintiff alleges disability due to an anxiety disorder with
panic attacks, borderline intellectual functioning, and
depression.  Tr. 27.

---

[2] Citations to the official transcript of record filed by
the Commissioner on October 3, 2018, are referred to as "Tr."

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 17, 31-33.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as

adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11
(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690
(9th Cir. 2009)). It is more than a mere scintilla [of evidence]
but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d
at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009). The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision. *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).

## DISABILITY ANALYSIS

## I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.

2007). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's Residual Functional Capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.945(a). *See also* Social Security Ruling (SSR) 96-8p. "A

'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

**<u>ALJ'S FINDINGS</u>**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her April 17, 2014, amended alleged onset date. Tr. 27.

At Step Two the ALJ found Plaintiff has the severe impairments of borderline intellectual functioning, depression, and an "anxiety disorder with associated panic attacks." Tr. 27. The ALJ found Plaintiff's conditions of obesity and back pain are nonsevere. Tr. 27.

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1. The ALJ found Plaintiff has the RFC to perform "a full range of work at all exertional levels" with the following limitations: never interacting with the general public or "perform[ing] any task that would require team work"; never climbing ladders, ropes, or scaffolds or working around unprotected heights or dangerous machinery; and only occasionally interacting with coworkers "such as brief conversations." Tr. 29. The ALJ also found Plaintiff can "understand, remember and carry out tasks or instructions consistent with occupations with an SVP level of 1 to 2[;] . . . make simple work related decisions[; and] only work in an environment with few workplace changes." Tr. 29.

At Step Four the ALJ found Plaintiff does not have any past

relevant work.  Tr. 34.

At Step Five the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy.  Tr. 35. Accordingly, the ALJ found Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred when she (1) improperly found Plaintiff's impairments do not meet or equal Listing 12.05; (2) improperly rejected Plaintiff's testimony in part; (3) improperly rejected the statement of lay witness Allenisha B.; and (3) improperly partially rejected the opinion of reviewing psychologist Bill Hennings, Ph.D.

**I.    The ALJ did not err when she found Plaintiff's impairments do not meet or equal Listing 12.05(B).**

Plaintiff contends the ALJ erred when she found at Step Three that Plaintiff's impairments do not meet or equal the criteria of Listing 12.05(B).

To satisfy the criteria of Listing 12.05(B) a claimant must establish she has:

> 1.  Significantly subaverage general intellectual functioning evidenced by a or b:
>
>     a.  A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>
>     b.  A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part

score) of 70 or below on an individually
administered standardized test of
general intelligence; and

2.  Significant deficits in adaptive functioning
    currently manifested by extreme limitation of
    one, or marked limitation of two, of the
    following areas of mental functioning:

    a.  Understand, remember, or apply
        information (see 12.00E1); or

    b.  Interact with others (see 12.00E2); or

    c.  Concentrate, persist, or maintain pace
        (see 12.00E3); or

    d.  Adapt or manage oneself (see 12.00E4);
        and

3   The evidence about your current intellectual
    and adaptive functioning and about the
    history of your disorder demonstrates or
    supports the conclusion that the disorder
    began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05(B).

On September 24, 2014, Donna Wicher, Ph.D, P.C.,
administered the Wechsler Adult Intelligence Scale (WAIS) during
an intellectual assessment of Plaintiff. Plaintiff received a
full-scale IQ score of 79 and a verbal comprehension score of 80,
which placed "her overall level of functioning at the upper end
of the Borderline Range of intellectual ability." Tr. 429.
Dr. Wicher noted Plaintiff "appeared to give up quickly on
challenging tasks. As a consequence, her test results may
underestimate her actual abilities." Tr. 429. Dr. Wicher also
noted "there were indications of sub-optimal effort and her

functioning may actually be in the Low Average range of intellectual ability." Tr. 430. Thus, the Court finds on this record that Plaintiff has not established she has "significantly subaverage general intellectual functioning" within the meaning of Listing 12.05(B)(1).

In addition, the record does not reflect any medical professional has stated Plaintiff has an extreme limitation of one or marked limitation of two of the following areas of mental functioning:

     a.    Understand, remember, or apply information (see 12.00E1); or

     b.    Interact with others (see 12.00E2); or

     c.    Concentrate, persist, or maintain pace (see 12.00E3); or

     d.    Adapt or manage oneself.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05(B)(2). Dr. Wicher opined Plaintiff had only mild-to-moderate limitations in all of the § 12.05(B)(2) areas. Tr. 430. Similarly, Dr. Hennings, reviewing psychologist, opined Plaintiff had only mild-to-moderate limitations in all of the § 12.05(B)(2) areas. Tr. 81-86.

Accordingly, on this record the Court concludes the ALJ did not err when she found at Step Three that Plaintiff's impairments do not meet or equal the criteria of Listing 12.05(B).

## II. **The ALJ did not err when she partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred by failing to provide clear and convincing reasons for partially rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified she cannot work due to anxiety and panic attacks.  Plaintiff stated she began experiencing severe anxiety in July 2014 after she had gallbladder surgery.  Plaintiff testified she believed she "passed away" during the surgery but the doctor advised her that did not happen.  Nevertheless, Plaintiff "couldn't breathe" and she began to feel dizzy.  Tr. 62-63.  Plaintiff stated she is unable to explain adequately what triggered her anxiety attacks.  She noted she feels anxious when she is around people or loud noises or "[j]ust anything, really. . . .  I'm overwhelmed."  Tr. 60.  Plaintiff stated she will have "a panic attack about any little thing and then it will go into anxiety.  And my vision will go in and out and my body, my knees will start to get numb and then I will faint."  Tr. 55.  Plaintiff testified she does not faint "too often" because she does not "normally go outside" and she does not have anxiety when she is inside her house.  Tr. 55.  Plaintiff stated the last time she fainted was a month before the hearing.  Plaintiff testified:

> I was walking my daughter out to the bus stop
> where I used to live.  And I don't know what
> happened but she asked me she – she yelled at me
> and then I got up off the ground and then I ran
> back to my house.

Tr. 55.  Plaintiff noted she had fainted from panic approximately six or seven times in the two years before the hearing when she was at the grocery store or checking the mailbox, but not when

she was at the doctor's office or the hospital.  Plaintiff stated
she did not go to the doctor or hospital after these fainting
episodes because she "figure[s] . . . they're just going to tell
me that it's my anxiety."  Tr. 69.  Plaintiff stated she flew to
Indiana in 2014,[3] but she handled flying by getting drunk.
Tr. 61.  In Indiana she "missed out on a lot of things" because
she "kept having anxiety."  Tr. 61.  She was in her grandmother's
room for three days "just in bed."  Tr. 61.  She could not get up
because she would get dizzy immediately so she did not go
downstairs or "on the trips."  Tr. 61.

    Plaintiff noted her doctor "really want[s]" her to go to
therapy and has advised her that she needs to be in therapy in
order to have a physician prescribe medication.  Tr. 57.
Plaintiff, however, stated she is "not open" to therapy because
whenever she tries therapy it makes her "so emotional.  Like I'm
ok when I go in and then when I come back out I'm a complete
wreck, like, emotionally."  Tr. 57.

    The ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause the alleged
symptoms," but Plaintiff's testimony "concerning the intensity,
persistence and limiting effects of [her] symptoms [is] not
entirely consistent with the medical evidence and other evidence

_____

    [3] Contemporaneous medical records indicate Plaintiff went to
Indiana in December 2015 for "the holidays."  Tr. 700.

in the record."  Tr. 30.  The ALJ noted Dr. Wicher reported

Plaintiff's level of functioning was at the upper end of the

borderline range of intellectual disability.  Dr. Wicher also

noted, however, that Plaintiff appeared to give up easily on

challenging tasks, and, therefore, her test scores might

underestimate her actual abilities.  Dr. Wicher also concluded

Plaintiff's alleged difficulty leaving her home does not rise to

the level of agoraphobia.  Dr. Wicher assessed Plaintiff with, at

most, mild-to-moderate difficulties with activities of daily

living, social functioning, concentration, persistence, and pace.

The ALJ pointed out Plaintiff's repeated refusal to undergo

therapy and noncompliance with various anxiety medications.  The

record reflects Plaintiff continued to request only Xanax to

treat her anxiety notwithstanding the fact that several medical

professionals refused to prescribe Xanax for Plaintiff long-term

because it would not ameliorate her condition or her symptoms

long-term.  In addition, several medical professionals declined

to grant Plaintiff's request for a six-month to one-year excuse

from the JOBS program[4] due to anxiety.  For example, in April

2015 treating physician Deborah Jane Murphy, M.D., noted

Plaintiff had stopped taking Effexor because she did not believe

---

[4] The Jobs Opportunity and Basic Skills (JOBS) program is
Oregon's employment and training program for low-income families
on Temporary Assistance for Needy Families.  *See* https://
www.oregon.gov/dhs/assistance/CASH/Pages/jobs-program.aspx.

it was helping, Plaintiff did not want to take any medication other than Xanax, and Plaintiff did not want to "do therapy" because Plaintiff did not believe it helped her in the past. Tr. 585. Dr. Murphy advised Plaintiff that she did not believe Plaintiff "will qualify for disability because you have not had adequate treatment for the disease that you are seeking disability for." Tr. 586. In May 2015 Dr. Murphy noted Plaintiff still did "not want to engage in counseling" and did "not want to take any other daily medications. [Wants to] take Xanax on a regular basis." Tr. 599. Dr. Murphy explained to Plaintiff that benzodiazepines are "addictive, build a tolerance, not a good long-term solution use on a daily basis for anxiety." Tr. 599. After Dr. Murphy advised Plaintiff that she was not going to prescribe Xanax, Plaintiff left while Dr. Murphy was talking to another doctor. Plaintiff did not return to treatment with Dr. Murphy.

In August 2015 Plaintiff received care at Gresham Family Medicine. On August 26, 2015, Plaintiff was seen by Theresa Brown, N.D. Plaintiff advised Dr. Brown that "Xanax and lorazepem have been only successful meds." Tr. 722. Dr. Brown provided Plaintiff with a 30-day work release from the JOBS program due to anxiety. On September 21, 2015, Plaintiff requested a "note for her case manager to excuse her from the JOBS program" for six months to a year due to anxiety. Tr. 715.

Matthew Sbardella, N.P., refused Plaintiff's request and noted:

> It is unreasonable to give her an excuse note from
> the JOBS program for any longer than [one month]
> as there is no active treatment plan to manage her
> anxiety.  Discussed reevaluating her ability to
> participate in the JOBS program each appointment
> would be reasonable but she not [sic] expect an
> excuse from the program for six months up to a
> year.

Tr. 716.  On October 14, 2015, Sydney Pallesen, N.D., noted
Plaintiff had discontinued her anti-anxiety medication.
Dr. Pallesen noted he was "not comfortable initiating
benzodiazepine medications as requested.  Recommended pt pursue
counsling for anxiety management."  Tr. 713.  On October 21,
2015, psychiatric mental-health nurse practitioner Karen McNulty
prescribed Plaintiff a 30-day supply of Xanax, but noted Xanax
was "of temporary limited use . . . not a good long term
solution."  Tr. 710.  On November 4, 2015, Plaintiff requested
P.M.H.N.P. McNulty to provide her with a one-year leave
from the JOBS program and a refill of Xanax, both of which
P.M.H.N.P. McNulty declined to do.

On December 11, 2015, Plaintiff reported to Jennifer Lamar,
N.D., and requested a "bridge of Xanax, which she says has been
prescribed by her therapist in the past."  Tr. 703.  Dr. Lamar
declined to prescribe Xanax and advised Plaintiff to discuss her
anxiety with her mental-health provider.  On December 18, 2015,
Plaintiff returned to Dr. Lamar "to discuss an excuse letter for
her jobs program."  Tr. 700.  Plaintiff reported she was seeing a

counselor at Lifeworks, but she missed two appointments and, as a result, was instructed to take two classes about coping skills before she could be seen by the counselor.  Dr. Lamar refused to provide Plaintiff with an excuse letter and discussed with her the "need for mental health counseling [to be] on board." Tr. 701.  On January 13, 2016, Plaintiff reported to Dr. Lamar that she was experiencing apathy and insomnia while taking Celexa.  Tr. 698.  Dr. Lamar discontinued Celexa, initiated a trial of Nortriptyline, and provided Plaintiff with a letter excusing her from the JOBS program for one month while Plaintiff adjusted to Nortriptyline.

On March 22, 2016, Tyler Boyer, Q.M.H.P., with Cascadia Behavioral Healthcare, conducted an intake assessment of Plaintiff in which she reported severe anxiety and dizziness. Q.M.H.P. Boyer recommended Plaintiff undergo individual and group counseling to help her build skills for coping with PTSD. Plaintiff declined group counseling due to her anxiety.  On April 21, 2016, Plaintiff was seen by Pari Mazhar, MSW, LCSW, with Cascadia to outline a treatment plan.  On April 26, 2016, Plaintiff was seen by Ralph Huerta, Q.M.H.P., with Cascadia. Plaintiff told Q.M.H.P. Huerta that she "really need[s] to get this JOBS waiver signed."  Tr. 618.  Plaintiff reported "her ongoing anxiety does not allow her to fulfill her JOBS obligation and she needs to have a letter provided by either her PCP or her

mental health provider to substantiate this claim." Tr. 618.
Q.M.H.P. Huerta "informed [Plaintiff] of policies mandated by
Multnomah County which do not allow this [therapist] to dismiss
her responsibilities associated with her public assistance. This
[therapist] worked with [Plaintiff's] defensive responses to the
information provided . . ., and encouraged [Plaintiff] to have
her PCP make efforts to support her in this endeavor." Tr. 618.
Plaintiff was seen by counselors at Cascadia on April 27 and
May 5, 2016.

On May 17, 2016, Plaintiff was seen by Alberto Rodriguez,
P.A., and she requested he sign "TANF[5] paperwork . . . to excuse
her from any job training and assist with income." Tr. 687.
P.A. Rodriguez gave Plaintiff a note for "1 month off all work
related stressors." Tr. 688. P.A. Rodriguez advised Plaintiff
to continue treatment with her mental-health provider and noted
he would "re-evaluate [Plaintiff's TANF paperwork] in one month."
Tr. 688.

Plaintiff cancelled her therapy sessions with Cascadia on
June 2 and June 9, 2016, and did not show for her session
scheduled June 20, 2016.

---

[5] TANF is Temporary Assistance for Needy Families. "The
TANF program, which is time-limited, assists families with
children when the parents or other responsible relatives cannot
provide for the family's basic needs." https://www.hhs.gov/
answers/programs-for-families-and-children/what-is-tanf/index.
html.

On July 1, 2016, Plaintiff attended a therapy session with Cascadia.

On August 10, 2016, Plaintiff was seen by Sydney Pallesen, N.D. Plaintiff requested Dr. Pallesen complete her JOBS form. Plaintiff advised Dr. Pallesen that "her caseworker would like her to have a letter to excuse her from jobs program duties. Pt has completed this form every few months and case worker recommends completing 6-12 months exemption for convenience." Tr. 683. Plaintiff stated she was advised by Cascadia that it does not complete JOBS forms. Dr. Pallesen advised Plaintiff that she would consult with Plaintiff's mental-health provider at Cascadia about a waiver from the JOBS program.

Plaintiff did not show for her therapy session with Cascadia on August 24, 2016, and, in fact, the record does not reflect any sessions at Cascadia after August 24, 2016.

On October 18, 2016, Plaintiff reported to the Adventist Medical Center complaining of abdominal pain. John Lee, M.D., examining physician, diagnosed Plaintiff with a right ovarian cyst. Dr. Lee prescribed 12 tablets of Norco and 30 ibuprofen to address her pain. Tr. 765.

On October 24, 2016, Plaintiff reported to Dr. Pallesen complaining of pain from an ovarian cyst. Plaintiff advised Dr. Pallesen that she had been diagnosed with an ovarian cyst at Adventist Medical Center, she had used all of her Norco, and

ibuprofen was not controlling her pain.  Tr. 679.  Dr. Pallesen

advised Plaintiff that she did not have the chart notes or

imaging from Adventist and "discussed [with Plaintiff the] clinic

policy and need to see pathology warranting narcotic treatment."

Tr. 680.  Dr. Pallesen sent a request to Adventist for their

notes and imaging.  Dr. Pallesen offered Plaintiff a Toradol

injection for pain while they waited for the information from

Adventist, but Plaintiff declined.  Dr. Pallesen noted she had a

> [s]light concern with regard to the fact that
> [Plaintiff's] mother has a narcotic history/has
> discussed selling narcotics in our clinic lobby.
> At each office visit, [Plaintiff] has requested a
> controlled substance, and is unwilling to try
> alternatives to narcotic or benzodiazepine.
> [Plaintiff] becomes increasingly agitated when
> offered Toradol injection for pain and walks out
> of clinic stating that she will "just go to the
> [Emergency Department] again."  Declines pelvic
> examination and further work up.

Tr. 680.  The record does not reflect any further visits to

Dr. Pallesen's clinic.

On October 24, 2016, Plaintiff reported to the emergency

department of Adventist Medical Center complaining of pain from

an ovarian cyst.  An ultrasound revealed Plaintiff had a

"persistent large right ovarian cyst which has enlarged since 18

October."  Tr. 749.  An emergency department physician prescribed

Tylenol/ibuprofen for "symptomatic relief" as well as 15 tablets

of Norco.  Tr. 749-50.

In summary, the record supports the ALJ's findings that

Plaintiff repeatedly refused to undergo therapy, discontinued various anxiety medications prescribed by treating and examining medical professionals, and continued to request only Xanax to treat her anxiety notwithstanding the fact that several medical professionals refused to prescribe Xanax to Plaintiff long-term because it would not ameliorate her condition or her symptoms long-term. The record also reflects several medical professionals declined to grant Plaintiff's request for a six-month to one-year excuse from the JOBS program on the grounds that such a long excuse from the JOBS program was unwarranted.

The ALJ also found Plaintiff's allegations were inconsistent with her activities. For example, although Plaintiff reported she suffered severe anxiety whenever she left the house, the record reflects Plaintiff flew to Indiana for the holidays in December 2015. Plaintiff testified at the hearing that she spent the trip to Indiana in her room due to extreme anxiety, but Plaintiff did not report that experience to any of her healthcare providers when she returned from her trip. In addition, in December 2014 Plaintiff reported to an emergency-room doctor that she hurt herself when she slipped on her friend's floor and in July 2015 Plaintiff sought treatment for injuries incurred while roughhousing with a friend.

The Court concludes on this record that the ALJ did not err when she partially rejected Plaintiff's testimony because she

provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## II. The ALJ did not err when she only gave "some weight" to the lay-witness statements of Plaintiff's sister Allenisha B.

Plaintiff alleges the ALJ erred when she only gave "some weight" to the lay-witness statements of Plaintiff's sister Allenisha B.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). When "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout,* 454 F.3d at 1056.

Allenisha B. submitted a Third Party Adult Function Report

on August 7, 2014, in which she stated Plaintiff suffers anxiety in public, which had become worse "recently." Tr. 367. Allenisha B. noted Plaintiff cannot "go far outside most of the time she can only go to the front porch." Tr. 368. Allenisha B. noted Plaintiff has people over to her house once or twice a week, but she "no longer has a social life outside of her house." Tr. 370. Allenisha B. also stated Plaintiff has trouble paying attention for more than 20-30 minutes and needs instructions repeated multiple times before she understands them. Tr. 371.

Allenisha B. also submitted an undated written statement in which she described the first time she saw how anxiety affects Plaintiff: She noted she and Plaintiff were at the grocery store and suddenly Plaintiff looked faint, asked for the car keys, and asked Allenisha B. to finish the grocery shopping. Tr. 412. Allenisha B. states Plaintiff cannot go to family functions, walk outside, or ride bicycles with her daughter. She believes Plaintiff would have to be "heavily medicated" if she had to work around people and that Plaintiff's anxiety is "very unpredictable." Tr. 412.

The ALJ gave "some weight" to Allenisha B.'s statements to the extent that they indicate Plaintiff would have trouble working around other people, remembering complex instructions, or making complex work-related decisions. The ALJ rejected the rest of Allenisha B.'s statements on the ground that they are not

supported by the medical evidence and are based on Plaintiff's self-reports.

The Court concludes on this record that the ALJ did not err when she only gave some weight to the lay-witness statements of Allenisha B. because the ALJ provided specific reasons germane to the witness for doing so.

### III. The ALJ did not err when she failed to adopt all of the limitations assessed by Dr. Hennings.

Plaintiff asserts the ALJ erred when she failed to adopt all of the limitations assessed by Dr. Hennings, a nonexamining physician.

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

On September 30, 2014, Dr. Hennings completed a Psychiatric Review Technique assessment of Plaintiff based on her medical

records.  Dr. Hennings found Plaintiff has moderate limitations
in her ability to complete activities of daily living; to
maintain social functioning; and to maintain concentration,
persistence, or pace.  Tr. 81.  Specifically, Dr. Hennings found
Plaintiff has moderate limitations in her ability to understand,
to remember, and to carry out detailed instructions; to interact
appropriately with the general public; and to travel frequently
"to unfamiliar locations but would be capable of routine
transportation arrangements."  Tr. 83-84.

The ALJ "generally adopted" Dr. Henning's opinion "for
[Plaintiff's] residual functional capacity, but declined to
limit [Plaintiff's] travel."  Tr. 33.  The ALJ noted Plaintiff
traveled to Indiana in December 2015, and Dr. Wicher, who
conducted an intellectual assessment of Plaintiff, did not
indicate Plaintiff had limitations on travel.

On this record the Court concludes the ALJ did not err when
she did not include in Plaintiff's RFC the travel limitation
assessed by Dr. Hennings because she provided legally sufficient
reasons supported by substantial evidence in the record for doing
so.  In any event, even if the ALJ erred when she declined to
adopt Dr. Henning's opinion as to Plaintiff's limitations on
frequent travel to unfamiliar locations, the Court concludes such
error is harmless because none of the jobs identified by the VE
require frequent (or any) travel to unfamiliar locations.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 7th day of March, 2019.


                              /s/ Anna J. Brown

        _____
                              ANNA J. BROWN
                              United States Senior District Judge